AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
OCT 25 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. **19MJ4725**
iPhone Cellular Phone )
Model:iPhone Xs Max )
IMEI: 357282093847427 (Target Device 1) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached affidavit from SA Hausmann

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Kyle Hausmann, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **10/25/19**

*Judge's signature*

City and state: San Diego, California        Hon. Karen S. Crawford, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Kyle Hausmann, being duly sworn hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device:

> iPhone Cellular Phone
> Model:iPhone Xs Max
> IMEI: 357282093847427
> **(Target Device 1)**

as further described in Attachment A, and to seize as evidence of crimes, specifically as violations of Title 21, United States Code, Section (s) 952 and 960, as further described by Attachment B.

2. Agents seized the **Target Device 1** on October 6, 2019, from Fatima MUNOZ's ("MUNOZ") vehicle at the time she was arrested at the Otay Mesa Port of Entry, San Diego, California, for the importation of approximately 37.42 kilograms (82.49 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substance. At the time of her arrest, MUNOZ was the driver of a 2004 Dodge Durango bearing Mexican license plates A09NXE2. **Target Device 1** is currently in the possession of the Customs and Border Protection Vault, located at 9495 Customhouse Plaza, San Diego, California 92154.

3. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Target Device 1**, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## EXPERIENCE AND TRAINING

4. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States

1

Code, Section 2516. I am also a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

5. I am a Special Agent with Homeland Security Investigations (HSI) and have been so employed since August of 2016. Prior to becoming an HSI Special Agent, I was a United States Border Patrol Agent for approximately 7 years. I am currently assigned to the Contraband Smuggling Group at Otay Mesa, San Diego, California. I have received training from the Federal Law Enforcement Training Center and have attended the U.S. Border Patrol Academy, and other law enforcement investigative courses.

6. As an HSI Special Agent, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I have participated in and conducted investigations of violations of various federal criminal laws, including distribution of federally controlled substances, importation of federally controlled substances, conspiracy to import, possess and distribute federally controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code, as well as various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, trafficked, received and/or distributed federally controlled substances. Also, these investigations resulted in seizures of federally controlled substances. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in various parts of the world, including Mexico and the United States.

7. I am currently responsible for conducting criminal investigations into trafficking, possession, distribution and sales of controlled substances that are being illegally trafficked across the United States/Mexico International Boundary through the use of vehicles. These investigations involve various concealment methods used in order to avoid detection of controlled substances from law enforcement officers. I have had

numerous conversations with subjects regarding their usage, sales and possession of narcotics. I have participated in the execution of search warrants, the majority of which have involved narcotics trafficking and distribution offenses. I have participated in numerous search warrants at a variety of premises including businesses and residences. I have also sought numerous search warrants for cellular/mobile telephones in connection with my investigations.

8. Based on my experience and training, I am familiar with the methods utilized in narcotics-trafficking operations and the trafficking patterns employed by narcotics organizations. I have also spoken with agents, as well as other law enforcement officers, about their experiences and the results of their investigations and interviews. I have become knowledgeable of the methods and modes of narcotics operations and the language and patterns of narcotics abuse and trafficking. I have become familiar with the methods of operation typically used by narcotics traffickers.

9. Specifically, I have learned that narcotics traffickers often require the use of one or more telephone devices to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. I also have learned that professional narcotics operations depend upon maintaining their extensive contacts. The use of telephones is essential in maintaining timely long-distance and local contacts with the original suppliers and those down the organizational chain to the local traffickers. The telephone enables narcotics dealers to maintain contact with narcotics associates, narcotics suppliers, and narcotics customers. I further have learned that narcotics traffickers often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

10. Based upon my training and experience as an HSI Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking

investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

  a. Narcotics traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

  b. Narcotics traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

  c. Narcotics traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  d. Narcotics traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Narcotics traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

  f. Narcotics traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or narcotics proceeds.

  g. The use of cellular telephones by conspirators or narcotics traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, videos, call logs, address book entries, IP addresses, social network data, and location data.

 11. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone. SIM cards are necessary for a cell phone to operate properly. I believe there is a SIM card in **Target Device 1**.

## FACTS SUPPORTING PROBABLE CAUSE

14. On October 6, 2019, at approximately 1:20 p.m., MUNOZ, a French citizen, applied for entry into the United States from Mexico through the Otay Mesa Port of Entry in vehicle lane #7. MUNOZ was the driver, sole occupant, and registered owner of a 2004 Dodge Durango ("the vehicle") bearing Mexican license plates A09NXE2. A Customs and Border Protection Officer ("CBPO") was conducting pre-primary roving patrol operations when they inspected MUNOZ. The CBPO received two negative customs declarations from MUNOZ and began an inspection of her vehicle. The CBPO observed the vehicle's gas tank appeared to have been recently removed. The gas tank also "tapped solid". The CBPO suspected MUNOZ was smuggling contraband via her vehicle's gas tank and requested assistance.

15. The Canine Enforcement Officer conducted a canine search of the vehicle. The Human and Narcotic Detection Dog alerted to the gas tank of the vehicle. MUNOZ and the vehicle were referred to the secondary inspection area.

16. A CBPO conducted a seizure inspection of the vehicle. The inspection resulted in the discovery of approximately 77 packages concealed in the gas tank of the vehicle, with a total approximate weight of approximately 37.42 kilograms (82.49 pounds). A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine. MUNOZ was placed under arrest at approximately 4:10 p.m.

17. **Target Device 1** was located with a brown and black checkered personal bag found within the vehicle. According to crossing records I accessed from the Treasury Enforcement Communications System (TECS), this vehicle (Mexican license plates A09NXE2) had approximately five crossings in the last six months.

18. During a post-*Miranda* interview, MUNOZ stated she picked up the vehicle from a man known as "Manuel" earlier on the day of her arrest and drove it to the Otay Mesa Port of Entry. "Manuel" had previously offered MUNOZ $7,000 to smuggle narcotics into the United States, but MUNOZ denied any knowledge of the methamphetamine at the time of her arrest. MUNOZ stated she was traveling to Paramount, California to pick up her

5

grandmother from her aunt's house. MUNOZ stated no one could collaborate her planned trip because she was only going to call her aunt after she entered the United States.

19. In light of the above facts, and my own experience and training, there is probable cause to believe that MUNOZ was using **Target Device 1** to communicate with others to further the importation of illicit drugs into the United States. Based on my training and experience, I believe analysis of **Target Device 1** will reveal evidence of the importation of illicit drugs. Additionally, I know that records, images, and/or data is stored on digital storage devices such as **Target Device 1,** and even when such digital information has purportedly been erased or deleted, the data may still be retrievable.

20. Additionally, I know persons committing criminal acts will often boast about the criminal activity to friends, associates, or co-conspirators. This boasting is not only done verbally, but can be done in letters, notes, e-mails, instant messaging, text, or other computer and cellular phone type communications. They often save these documents related to their crimes as memorabilia or reference material which can be located in physical form or on computers, cellular phones, or digital storage media such as contained in Target Device 1.

21. Based on my training and experience, I know that individuals who use cellular phones such as Target Device 1 in their crimes will often try to hide the digital evidence by deleting data files. Computer forensic specialists can often retrieve these data files, even after their deletion. Individuals who use cellular phones in their crimes may use several different applications, operating systems, and storage devices to manage the information and communications related to these acts.

22. Furthermore, based on my training and experience, I know that persons in control of digital devices such as Target Device 1 leave evidence of their identification such as photographs, documents, email and text correspondence. Such described dominion and control evidence is vital to proving control over the described property to be seized and may also exist on the subject devices.

23. In my training and experience, narcotics traffickers may be involved in the

planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as MUNOZ, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search Target Device 1 for data beginning on August 7, 2019 through October 7, 2019.

## METHODOLOGY

24.  It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually

and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

25. Following the issuance of this warrant, I will collect the subject cellular/mobile telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

26. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days from the date that the Court signs the warrant, absent further application to this Court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

27. The United Stated conducted a manual search of **Target Phone 1** on October 6, 2019.[1] Evidence of communication was viewed with an individual known as "Manuel." The same name "Manuel" who offered MUNOZ $7,000 to smuggle narcotics from Mexico into the United States.

**CONCLUSION**

28. Based on all of the facts and circumstances described above, there is probable cause to conclude that Fatima MUNOZ' used **Target Device 1** to facilitate violations of Title 21, United States Code, Section(s) 952 and 960.

29. Because **Target Device 1** was promptly seized during the investigation of MUNOZ's trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by MUNOZ continues to exist on

---

[1] Nothing obtained in the manual search of **Target Device 1** is being relied upon in seeking this warrant. This information is provided for the purpose of full disclosure. I ask the Court not to consider this information in making its probable cause determination whether to authorize the requested search and seizure warrant. It is possible for deleted data to be extracted from a cellular telephone during a forensic analysis of the cellular phone.

8

**Target Device 1**. As stated above, I believe that the date range for this search is from August 7, 2019 through October 7, 2019.

30. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A and seize the item listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Kyle Hausmann
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 25th day of October, 2019.

Hon. Karen S. Crawford
United States Magistrate Judge